UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VIRGINIA HAUF and STEPHEN BARROW,

        Plaintiffs,

v.

LIFE EXTENSION FOUNDATION and
WILLIAM FALOON,

        Defendants.
                                        /

Case No. 1:06-cv-627

HON. JANET T. NEFF

## OPINION

Plaintiffs Virginia Hauf and Stephen ("Steve") Barrow are mother and son who filed a seven-count complaint arising from the 2005 publication of Barrow's cancer recovery story in the membership drive campaign materials disseminated by Life Extension Foundation (LEF). LEF moves for dismissal of Counts 1 through 4 and 7 as to Barrow and Counts 4 through 6 as to Hauf under FED. R. CIV. P. 12(b)(6) (Dkt 4). LEF founder William Faloon moves for dismissal under Rules 12(b)(6) and 12(b)(2) of Counts 1 through 5 against him (Dkt 13). For the reasons that follow, both motions to dismiss are DENIED.

I

A. *Background Facts*

In January 1991, Barrow, then 16 years old, was diagnosed with brain cancer and given three to six months to live. Compl. ¶¶ 12-13. At the time, both Hauf and Barrow were Michigan residents Compl. ¶¶ 1-2.

In May 1991, Hauf took Barrow to Mexico to begin Immune Augmentative Therapy. Compl. ¶¶ 14-15. Hauf also gave Barrow shark cartilage supplements. Compl. ¶ 19. In June 1992, Barrow's MRIs showed a shrinkage of the tumor in his brain. Compl. ¶ 17.

Plaintiffs allege that "[i]n approximately 1993, Hauf was told by a friend that she could buy the [shark cartilage] supplements at a lower cost by ordering from defendant LEF," a Florida non-profit corporation. Compl. ¶¶ 3, 19. Plaintiffs allege that they ordered the supplements from LEF for approximately nine months and have not since ordered any LEF products. Compl. ¶ 26. By 1994, Barrow was considered to be "fully recovered." Compl. ¶¶ 18, 31.

Plaintiffs allege that "Hauf and her son's story had begun to gain widespread attention through local, regional and national media." Compl. ¶ 20. Faloon and LEF co-founder Saul Kent contacted Hauf and obtained her permission to publish a short version of their story in LEF's magazine and LEF's "FDA Holocaust Museum." Compl.¶¶ 21-22, 24. At Faloon and Kent's request, plaintiffs' story was published in LEF's magazine via a "letter to the editor" written by Hauf. Compl. ¶¶ 23, 27. Plaintiffs allege that "Hauf insisted that 'there was to be no monetary gain' from the use of her or Steve's names, likenesses, or story." Compl. ¶ 24.

Plaintiffs allege that Hauf had two more contacts with LEF. First, in 1995, at Kent's request, Hauf sent an update on Barrow, which was also published in LEF's magazine. Compl.¶ 28. Second, in 2002, Hauf agreed to send another update but allegedly "reiterated both verbally and in writing that her update was not to be used for any monetary gain." Compl. ¶ 29.

Plaintiffs allege that since Barrow's recovery, Hauf has "devoted her life to helping those afflicted with cancer and other diseases," traveling throughout the country to speak to groups and grant interviews to widely read publications. Compl. ¶¶ 32-34. Plaintiffs allege that Hauf has

2

"always refused to be paid or seek any form of compensation for her time." Compl. ¶ 35. Hauf continues to live in Michigan, and Barrow now lives in Las Vegas. Compl. ¶¶ 1-2.

Plaintiffs allege that in early September 2005, without their knowledge or consent, LEF mailed out membership drive campaign materials across and outside the United States, seeking new members and donations. Compl. ¶ 36. The membership drive materials included a two-page testimonial attributed to plaintiffs and included a photograph apparently meant to represent Hauf. Compl., Exh. A.

Plaintiffs allege that LEF did not have permission in 2005 to disclose this information, Compl. ¶ 39, and that the testimonial included at least three false statements: (1) "In my search to save my son's life, someone referred me to the Life Extension Foundation;" (2) "... the people of your organization supported my search for different treatment regimens we could try;" and (3) "Through your organization, I found out about a treatment called Immune Augmentative Therapy." Compl. ¶ 40. Plaintiffs allege that Barrow contacted LEF after the mailing went out and that an "editor" admitted to Barrow that LEF did not have permission to use plaintiffs' names, likenesses and story. Compl. ¶ 46.

B. *Procedural Posture*

On September 1, 2006, plaintiffs filed their complaint and demand for jury trial against LEF, Faloon, and Kent, seeking damages and injunctive relief. Plaintiffs alleged the following seven counts:

1. False Representation, False Endorsement, False Association, and False Advertising under the Lanham Act, 15 U.S.C. § 1125(a)

2. Invasion of Privacy – the Misappropriation of Plaintiffs' Names and Likenesses for Commercial Benefits

3. Invasion of Privacy – False Light

4. Unjust Enrichment

5. Right of Publicity on Behalf of Hauf only

6. Defamation on Behalf of Hauf and against LEF only

7. Violation of the Michigan Consumer Protection Act, MICH. COMP. LAWS § 445.901 *et seq.,* against LEF only

LEF did not answer the complaint but filed the instant motion to dismiss on November 22, 2006, seeking dismissal of Counts 1 through 4 and 7 as to Barrow and Counts 4 through 6 as to Hauf under FED. R. CIV. P. 12(b)(6). On December 21, 2006, Faloon joined in LEF's motion and moved to dismiss Counts 1 through 5 against him under FED. R. CIV. P. 12(b)(2) and 12(b)(6). Plaintiffs filed responses to both motions. Faloon and LEF filed replies to plaintiff's responses.

On August 10, 2007, this case was transferred to the undersigned pursuant to Administrative Order No. 07-091. The Court held a pretrial conference on December 17, 2007. Thereafter, plaintiffs filed a first amended complaint omitting Barrow's false advertising claim and adding Barrow to the right of publicity claim, along with new paragraph 36 detailing Barrow's involvement in helping others with cancer and other diseases (Dkt 29). The resulting re-numbered counts are the following:

1. False Endorsement and False Association

2. False Advertising and False Association on Behalf of Hauf only

3. Invasion of Privacy – Misappropriation

4. Invasion of Privacy – False Light

5. Unjust Enrichment

6. Right of Publicity

4

7. Defamation on Behalf of Hauf and against LEF only

8. MCPA violation against LEF only

The amended complaint otherwise made the same factual allegations.

The parties subsequently stipulated to filing a second amended complaint omitting from the caption Saul Kent, whom plaintiffs never served (Dkts 19-20, 34). The other substantive change in the second amended complaint, which makes the same factual allegations as the two earlier versions, is that plaintiffs specify that they are pleading their unjust enrichment claim in Count 5 as an alternative to their "invasion of privacy – misappropriation" claim in Count 3.

Defendants' pending motions to dismiss are decided without hearing argument. See W.D. Mich. LCivR 7.2(d).

## II. LEF's Motion to Dismiss

LEF's motion to dismiss is brought under FED. R. CIV. P. 12(b)(6). In evaluating the propriety of a dismissal under Rule 12(b)(6), this Court must consider the pleadings and affidavits in a light most favorable to the plaintiff and treat the factual allegations in the complaint as true. *Jones v. City of Carlisle, Ky.,* 3 F.3d 945, 947 (6th Cir. 1993), cert. den. 510 U.S. 1177 (1994). *Id.* "To withstand a challenge under Rule 12(b)(6), it must be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (citing *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

### A. *False Endorsement/Association*

LEF seeks dismissal of Barrow's false endorsement/association claim, arguing that Barrow's claim must fail because LEF's 2005 publication, at most, constitutes an endorsement of LEF products by Hauf, not Barrow. Further, LEF argues that Barrow has not alleged that "Steve," as

5

Barrow is referenced in the membership campaign materials, is distinctive or possesses secondary meaning or caused consumer confusion.

Barrow responds that his story is "intertwined" with his mother's story and that defendants' use of their story was an attempt to confuse the public and gain commercially by implicitly demonstrating that a miracle cancer survivor and his mother endorse defendants' products. Barrow argues that it is premature to argue that "Steve" is not a distinctive mark and that the evidence will easily show that his name acquired a secondary meaning to cause consumer confusion.

LEF replies that a story about Barrow told by Hauf is insufficient to constitute an endorsement by Barrow of LEF's activities. LEF also points out that none of the statements about Barrow in the publication are alleged to be false.

LEF's arguments for dismissal of Barrow's false endorsement/association claim lack merit.

Section 43(a) of the Lanham Act provides in pertinent part that "any person who, on or in connection with any goods or services ... uses in commerce ... any ... false or misleading representation of fact, which – (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C.A. § 1125(a)(1).

Courts have recognized false endorsement or association claims under § 43(a) of the Lanham Act where a celebrity's image or persona is used in association with a product so as to imply that the celebrity endorses the product. *ETW Corp. v. Jireh Pub., Inc.,* 332 F.3d 915, 925-926 (6th Cir. 2003). "False endorsement occurs when a celebrity's identity is connected with a product or service

in such a way that consumers are likely to be misled about the celebrity's sponsorship or approval of the product or service." *Id.* at 925-926.

Barrow need not prove that he is a "celebrity." Commercial value may be established by proof of (1) the distinctiveness of the identity and (2) the degree of recognition of the person among those receiving the publicity. *Cheatham v. Paisano Publications, Inc.,* 891 F.Supp. 381, 386 (W.D.Ky.,1995) (citing *Waits v. Frito-Lay, Inc.,* 978 F.2d 1093, 1098, 1101-1102 (9th Cir. 1992)).

Barrow may be able to demonstrate a notoriety among cancer patients or advocates of alternative medicine that is strong enough to have commercial value within the identifiable group. Plaintiffs allege that both "Hauf and Barrow are well known throughout the world for their story." Second Amended Compl. ¶ 50. LEF has not established "beyond a doubt" that Barrow can prove no set of facts in support of his false endorsement/association claim that would entitle him to relief. Rather, plaintiffs could prove a set of facts in support of Barrow's claim that the membership drive materials misled the public about his sponsorship or approval of LEF's activities and products.

B. *Invasion of Privacy – Misappropriation*

LEF argues that Barrow's "invasion of privacy – misappropriation" claim, which LEF characterizes as a right of publicity claim, fails because Barrow has not alleged that he achieved celebrity status or that his right to commercially exploit his own celebrity persona was being invaded. Alternatively, LEF argues that because plaintiffs' story has been told several times both in LEF's magazine and across the country, there is no liability where LEF merely gave further publicity to information that was already public.

Barrow responds that he successfully pled a claim for "invasion of privacy – misappropriation" by pleading the unauthorized use of his name or likeness resulting in a benefit

7

to defendants. Barrow claims that the right of publicity tort is separate from the tort of "invasion of privacy – misappropriation," although he concedes that courts sometimes confuse the two theories.

Although the Court agrees with LEF that the Sixth Circuit treats these two torts the same, LEF's argument for dismissal of Barrow's claim in this regard nonetheless lacks merit.

The common-law right of privacy is said to protect against four types of invasion of privacy:

(1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs;

(2) public disclosure of embarrassing private facts about the plaintiff;

(3) publicity that places the plaintiff in a false light in the public eye; and

(4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness. [*Ruffin-Steinback v. dePasse,* 82 F.Supp.2d 723, 728 (E.D.Mich.2000), aff'd 267 F.3d 457 (6th Cir. 2001)]

"This fourth category of invasion of privacy – misappropriation of a person's name or likeness – has become known as the 'right of publicity.'" *Ruffin-Steinback,* 82 F.Supp.2d at 728-729 (citing *Carson v. Here's Johnny Portable Toilets, Inc.,* 698 F.2d 831, 834 (6th Cir. 1983)).

There is no merit to Barrow's claim that the Sixth Circuit "separated" the torts in *Parks v. LaFace Records,* 329 F.3d 437 (6th Cir. 2003), cert. den. 540 U.S. 1074 (2003). Rather, the Sixth Circuit repeatedly referenced *Carson* and *Ruffin-Steinback* in its discussion of the elements of and defenses to a right of publicity claim. *Parks,* 329 F.3d at 459-461.

Similarly, there is no merit to Barrow's claim that the torts were separated in *Nichols v. Moore,* 334 F.Supp.2d 944 (E.D.Mich., 2004), where the district court judge merely observed that "[t]he Sixth Circuit refers to the claim alleged in Count X – appropriation of one's name or likeness

for the defendant's advantage, as the 'Right of Publicity.'" *Id.* at 957 n. 6 (again citing *Carson,* 698 F.2d at 834).

Regarding the elements for this claim, the "'right of publicity' differs from the first three types of the right to privacy; rather than the protection of a person's right 'to be left alone,' this right protects an individual's pecuniary interest in the commercial exploitation of his or her identity." *Ruffin-Steinback,* 82 F.Supp.2d at 729. All that a plaintiff must prove in a right of publicity action is (1) that he has a pecuniary interest in his identity, and (2) that his identity has been commercially exploited by a defendant. *Parks,* 329 F.3d at 460; *Landham v. Lewis Galoob Toys, Inc.,* 227 F.3d 619, 624 (6th Cir. 2000); *Carson,* 698 F.2d at 835.

As with his Lanham Act false endorsement/association claim, Barrow "need not be a national celebrity to prevail;" rather, "in order to assert the right of publicity, a plaintiff must demonstrate that there is value in associating an item of commerce with his identity." *Landham,* 227 F.3d at 624. Indeed, "[t]he defendant's act of misappropriating the plaintiff's identity ... may be sufficient evidence of commercial value." *Id.*

Therefore, LEF has not established "beyond a doubt" that plaintiffs can prove no set of facts demonstrating that Barrow has a pecuniary interest in his identity and that defendants commercially exploited his identity.

C. *Invasion of Privacy – False Light*

LEF argues that Barrow's "invasion of privacy – false light" claim fails because there is no falsity alleged concerning Barrow himself, nor would any reasonable person find that telling the story of Barrow's successful recovery is "highly offensive."

9

Barrow responds that plaintiffs clearly pled that defendants published false information about Barrow because "the story, the publicity and the journey are both of plaintiffs." Resp. 16. Barrow argues that there is no doubt that once evidence is introduced about LEF's reputation, even the most reasonable person would consider the invasion of privacy in this case highly offensive.

The Court finds no merit in LEF's argument for dismissal.

This category of the common-law right of privacy, the third category delineated above, protects against "publicity that places the plaintiff in a false light in the public eye." *Ruffin-Steinback,* 82 F.Supp.2d at 728. "It is possible and not infrequent for privacy to be invaded by the same act or by a series of acts in two or more of the ways stated.... When this occurs, the plaintiff may maintain his action for invasion of privacy upon any or all of the grounds available to him. He may, however, have only one recovery of his damages upon one or all of the different grounds." Restatement (Second) Torts § 652A ("Invasion of Privacy – General Principles").

An "invasion of privacy – false light" claim differs from the other forms of invasion of privacy in that falsity is one of its essential elements. *Street v. National Broadcasting Co.,* 645 F.2d 1227, 1229, n. 1 (6th Cir. 1981). The two basic requirements necessary to sustain an "invasion of privacy – false light" claim are (1) the false light in which the other was placed would be highly offensive to a reasonable person; and (2) the publisher had knowledge of, or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other was placed. *Ashby v. Hustler Magazine, Inc.,* 802 F.2d 856, 860 (6th Cir. 1986).

Plaintiffs allege that they do not share LEF's "views or goals" regarding alternative medicine or the extension of human life. Second Amended Compl. ¶ 45. In light of the deferential reading of plaintiffs' complaint that is required in deciding a 12(b)(6) motion, LEF's own assessment of the

level of offense a reasonable person would experience in having his story printed in its membership campaign materials does not provide grounds for dismissal.

### D. *Unjust Enrichment*

LEF argued that plaintiffs' claim for unjust enrichment should be dismissed because the claim is duplicative of their right of publicity claim. LEF's argument has been rendered moot by plaintiffs' second amended complaint, which alleges the two counts in the alternative.

### E. *Right of Publicity*

LEF argues that Hauf's right of publicity claim should be dismissed because she fails to allege any damages. LEF asserts that Hauf, by her own admission, can have no damages for invasion of privacy because she refuses to seek commercial gain for use of her name, likeness or story.

Plaintiffs respond that all Hauf must allege to support her right of publicity claim is that she has a pecuniary interest in her identity and that her identity has been commercially exploited by defendants.

Again, for the reasons previously stated, the Court agrees with LEF that an "invasion of privacy – misappropriation" claim and a right of publicity claim are treated the same in the Sixth Circuit. Nonetheless, LEF's argument for dismissal of the claim lacks merit. LEF has not established "beyond a doubt" that plaintiffs can prove no set of facts demonstrating that Hauf has a pecuniary interest in her identity and that defendants commercially exploited her identity.

### F. *Defamation*

LEF argues that Hauf's defamation claim should be dismissed because Hauf has not alleged a statement that is defamatory in nature.

Plaintiffs respond that Hauf has detailed the exact defamatory statements and that LEF either did not read the complaint before making this argument or did not care what was stated in the complaint.

LEF replies that plaintiffs have missed its point that plaintiffs alleged only that the statements are false and that plaintiffs failed to particularly allege the defamatory nature of the statements.

LEF's argument lacks merit.

To establish a claim for defamation, a plaintiff must prove: (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation per quod). *Action Auto Glass v. Auto Glass Specialists,* No. 1:00-cv-756, 2001 WL 1699205, *4 (W.D. Mich., 2001) (citing *Burden v. Elias Bros. Big Boy Restaurants,* 613 N.W.2d 378, 381 (Mich. Ct. App. 2000)).

"A publication is defamatory if it tends to harm the reputation of another by lowering that person's estimation within the community or by deterring third persons from associating or dealing with that person." *Action Auto Glass, supra* (quoting *Heritage Optical Ctr., Inc. v. Levine,* 359 N.W.2d 210, 212 (Mich. Ct. App. 1984)).

Plaintiffs alleged that given Hauf's status in the areas of cancer, disease and alternative medicine, her reputation was and will continue to be lowered by being affiliated with LEF, an organization with which she does not share similar views or goals. Second Amended Compl. ¶¶ 45, 89. LEF's argument does not demonstrate "beyond a doubt" that plaintiffs can prove no set of facts in support of Hauf's defamation claim that would entitle her to relief.

### G. *Michigan Consumer Protection Act*

LEF argues that Barrow lacks standing to bring his Michigan Consumer Protection Act claim where he is neither a consumer nor a business competitor of LEF. Alternatively, LEF argues that Barrow's MCPA claim should be dismissed because there is no likelihood of confusion.

Barrow responds that LEF's argument addresses only the alleged violation of subsection (1)(a) of the MCPA and does not address the violations of subsections (1)(c), (bb) and (cc), which plaintiffs have also alleged. Barrow also points out that MCPA damages need not be monetary but can include mental distress. Barrow argues that LEF's "likelihood of confusion" argument is premature and that they have made the proper allegations to survive LEF's challenge.

LEF has not proffered meritorious bases for dismissal of Barrow's MCPA claim.

The MCPA prohibits certain "[u]nfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce." MICH. COMP. LAWS § 445.903(1). Trade or commerce is defined as the "conduct of business providing goods, property, or service primarily for personal, family or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or mixed, or any other article, or a business opportunity." MICH. COMP. LAWS § 445.902(d).

The MCPA is a remedial statute "designed to prohibit unfair practices in trade or commerce and must be liberally construed to achieve its intended goals." *Forton v. Laszar,* 609 N.W.2d 850, 853 (Mich. Ct. App. 2000). Michigan courts have held that the "clear legislative intent of the MCPA is to protect consumers in the purchase of goods and services." *Id.* Hence, subsection 11(2) provides that "a person who suffers loss as a result of a violation of this act may bring an action to

recover actual damages or $250.00, whichever is greater, together with reasonable attorneys' fees." MICH. COMP. LAWS § 445.911(2).

Plaintiffs may properly set forth a claim that would entitle Barrow to damages for "mental distress." See *Lozada v. Dale Baker Oldsmobile, Inc.,* 136 F.Supp.2d 719, 728 (W.D. Mich. 2001) (opining that "Michigan law permits the recovery of mental distress damages in cases under the MCPA when those damages 'are the legal and natural consequences of the wrongful act and might reasonably have been anticipated.'"); *Avery v. Industry Mortgage Co.,* 135 F.Supp.2d 840, 845 (W.D.Mich. 2001) (same).

### III. Faloon's Motion to Dismiss

Faloon's motion to dismiss is based on both FED. R. CIV. P. 12(b)(2) (lack of personal jurisdiction) and 12(b)(6) (failure to state a claim).

#### A. *Personal Jurisdiction*

In the context of a Rule 12(b)(2) motion, a plaintiff bears the burden of establishing the existence of jurisdiction. *Air Products and Controls, Inc. v. Safetech Intern., Inc.,* 503 F.3d 544, 549 (6th Cir. 2007). Where a district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is "relatively slight," *American Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169 (6th Cir. 1988), and "the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal," *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991). *Id.* The pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh "the controverting assertions of the party seeking dismissal," *Theunissen,* 935 F.2d at 1459. *Id.*

14

Here, Faloon argues that Michigan has neither general nor specific personal jurisdiction over him in this diversity action and that the counts against him must therefore be dismissed. He argues that general jurisdiction is not at issue because he does not have continuous or systematic contacts with Michigan. He argues that specific jurisdiction cannot be extended over him pursuant to Michigan's long-arm statute where the single communication between himself and Hauf alleged in the complaint does not constitute a purposeful availment of the privileges of acting in Michigan. Faloon points out that he has never resided in Michigan, owns no property in Michigan, and has not transacted any business in Michigan. Moreover, Faloon argues that the operative facts of plaintiffs' complaint do not arise from his single communication with Hauf. Last, Faloon argues that his actions do not have a substantial enough connection with Michigan to make the exercise of jurisdiction over him reasonable for purposes of due process.

Plaintiffs respond that Faloon is subject to specific personal jurisdiction in Michigan. Plaintiffs point out that they alleged in their complaint that Faloon was an officer and founder of LEF and that his tortious activity, and the consequences thereof, occurred in Michigan. Plaintiffs assert that they have a good faith belief in alleging that Faloon took part in the tortious conduct and that discovery will reveal his specific role. Plaintiffs point out that they alleged that the membership drive campaign materials were mailed to Michigan residents, thus satisfying the "doing or causing an act to be done" prong of the long-arm statute. Moreover, plaintiffs argue that exercising jurisdiction over Faloon comports with due process because a clear reading of their complaint reveals that plaintiffs' jurisdiction rests on Faloon's conduct that gives rise to the counts against him, not just his conduct in the telephone calls.

Plaintiffs have borne their burden of establishing this Court's limited personal jurisdiction over Faloon.

Personal jurisdiction over an out-of-state defendant arises from "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)).

In analyzing personal jurisdiction in diversity actions such as this one, federal courts must look to the law of the forum state to determine the reach of the district court's personal jurisdiction over parties, subject to constitutional due process requirements. *Air Products,* 503 F.3d at 550. Courts engage in a two-step process: (1) first, the court must determine whether the relevant long-arm statute authorizes the exercise of jurisdiction over the defendant; and, if so, (2) the court must determine whether exercise of that jurisdiction comports with constitutional due process. *Id.*

Michigan's long-arm statute provides in pertinent part that the "doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort" constitutes a sufficient basis for exercising limited personal jurisdiction over an individual. MICH. COMP. LAWS § 600.705(2).

To determine whether the exercise of personal jurisdiction is consistent with the requirements of due process, the court must first decide whether the defendant purposefully availed himself of the privilege of acting in the forum state or causing a consequence in the forum state. *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir. 1968). Second, the court must determine whether the cause of action arose from the defendant's activities there. *Id.* Finally, the court must determine whether the acts of the defendant, or consequences caused by the

defendant, have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Id.*

The mere allegation of intentional tortious conduct that has injured a forum resident does not, by itself, always satisfy the purposeful availment prong. *Air Products,* 503 F.3d at 552. See, e.g., *Reynolds v Int'l Amateur Athletic Federation,* 23 F.3d 1110, 1121 (6th Cir. 1994), cert. den. 513 U.S. 962 (1994). Here, however, plaintiffs have not merely alleged injury from defendants' intentional tortious conduct. Rather, plaintiffs point out that defendants identified the alleged author of the "testimonial" as a Michigan resident. Further, defendants included the testimonial in LEF campaign materials purposefully directed to other Michigan residents for solicitation of their paid memberships and donations. Therefore, the plaintiffs have satisfactorily demonstrated that Faloon – through LEF – purposefully availed himself of the privilege of acting in the forum state or causing a consequence in the forum state.

Plaintiffs have also demonstrated that these activities with Michigan – identifying the testimonial's alleged author as a Michigan resident and including the testimonial in LEF campaign materials sent to other Michigan residents – are the basis for their cause of action. Thus, plaintiffs have also satisfied the second due process prong.

Where, as here, the first two criterion are met, "an inference of reasonableness arises," and "only the unusual case" will not meet the third prong: whether the acts of the defendant, or consequences caused by the defendant, have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Theunissen,* 935 F.2d at 1461 (quoting *American Greetings Corp.,* 839 F.2d at 1170). Although it may be a burden on Faloon to

17

travel from Florida for this litigation, Michigan clearly has an interest in protecting its residents from misleading solicitations.

In summary, the exercise of specific personal jurisdiction over Faloon is both authorized by Michigan law and consistent with constitutional due process. Accordingly, his argument for dismissal under FED. R. CIV. P. 12(b)(2) lacks merit.

B. *Failure to State a Claim*

Faloon argues that plaintiffs' complaint must also be dismissed under FED. R. CIV. P. 12(b)(6). Faloon argues that plaintiffs fail to allege that he is personally responsible for LEF's acts. Faloon asserts that the mere fact that he is an officer of a corporation is not enough to invoke personal liability for actions allegedly taken by the corporation.

Plaintiffs respond that although they are not sure at this time, without discovery, whether Faloon participated in the drafting and distribution of membership campaign drive materials in his individual capacity or official capacity, "the bottom line is that sufficient facts have been alleged to connect him, either directly or inferentially, with the material elements of the tortious conduct alleged." Resp. 7-8. Plaintiffs argue that a corporate official is personally liable for all tortious acts in which he participates, regardless of whether he was acting on his own behalf or on behalf of the corporation.

Faloon's argument lacks merit for the reasons stated by plaintiffs.

"It is well established that corporate employees and officials are personally liable for all tortious and criminal acts in which they participate, regardless of whether they are acting on their own behalf or on behalf of a corporation." *Joy Management Co. v. City of Detroit,* 455 N.W.2d 55, 58 (Mich. Ct. App. 1990). Faloon's representations do not establish "beyond a doubt" that plaintiffs

18

can prove no set of facts in support of their claims against him that would entitle them to relief. Therefore, Faloon's argument under FED. R. CIV. P. 12(b)(6) also fails to provide a basis for dismissal.

## IV

Neither defendant proffered meritorious bases for dismissal of plaintiffs' claims. Accordingly, their motions are DENIED. An Order will be entered consistent with this Opinion.


DATED: March 4, 2008               /s/ Janet T. Neff                         
                                   JANET T. NEFF
                                   United States District Judge